useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34);

(c) The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, ¶40);

(d) The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e) The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

(f) The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

(g) The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79);

(h) The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

(i) The principle that a conservative approach be taken providing early recognition of unfavorable events and minimizing the amount of income reported. (See Statement No. 4 of the Accounting Principles Board ("APB Nos.") at 4 ¶¶ 28, 35, 171);

(j) The principle that the financial information presented should be complete. (See APB No. 4, ¶¶ 28, 35, 88, 171);

(k) The principle of fair presentation ("presents fairly"). (See APB No. 4, ¶¶ 109, 138, 189);

(l) The principle of adequacy and fairness of disclosure. (See APB No. 4, ¶¶ 81, 106, 189, 199);

(m) the principle of materiality concerning information that is significant enough to affect evaluations or decisions. (See APB No. 4, ¶¶ 25, 128);

(n) the principle that the substance of transactions rather than form should be reflected. (See APB No. 4, ¶¶ 25, 35, 127);

20

(o) the principle that the financial statements contain and disclose relevant, understandable, and timely information for the economic decisions of the user. (See APB No. 4, ¶¶ 23, 88, 89, 92);

(p) the principle that the financial statements provide reliable financial information about the enterprise for the economic decisions of the user. (See APB No. 4, ¶¶ 77, 78, 107, 108); and

(q) the principle that accounts receivable must be reported in the financial statements at net realizable value (See, e.g., ARB-43, Chapter 3A; FASB No. 5, Accounting for Contingencies.)

61.   The undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## FRAUD-ON-THE-MARKET PRESUMPTION

62.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine, in that:

  a)   Defendants made public misrepresentations or failed to disclose material facts regarding Sonus' business and financial condition during the Class Period;

  b)   The omissions and misrepresentations were material;

  c)   The Company's common stock traded on the NASDAQ, an efficient and open market;

21

d)         The misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock;

e)         Plaintiff and the members of the Class purchased Sonus' common stock between the time defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the misrepresented facts; and

f)         Sonus is followed by various analysts and news media. At all relevant times, the price of Sonus' common stock reflected the effect of news disseminated in the market.

63.     Based on the foregoing, Plaintiff and the members of the Class are entitled to the presumption of reliance upon the integrity of the market.

## THE SAFE HARBOR PROVISION IS INAPPLICABLE

64.     The statutory safe harbor under the Private Securities Law Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pleaded

22

herein, defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sonus who knew that those statements were false when they were made.

## COUNT I

## VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND SECRULE 10B-5

65. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. This Count is asserted against all defendants and is based upon Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

67. During the Class Period, defendants, singly and in concert, directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the Class. The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce Plaintiff and the other members of the Class to purchase Sonus' common stock during the Class Period at artificially inflated prices.

68.  Throughout the Class Period, Sonus acted through the Individual Defendants, whom it portrayed and represented to the financial press and public as its valid representatives. The willfulness, motive, knowledge, and recklessness of the Individual Defendants is therefore imputed to Sonus which is primarily liable for the securities law violations of the Individual Defendants.

69.  As a result of the failure to disclose material facts, the information the defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of Sonus' common stock was artificially inflated during the Class Period. In ignorance of the duty to disclose the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by said defendants, Plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the common stock in purchasing Sonus' common stock. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

70.  Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

71.  By reason of the foregoing, defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes, and artifices to defraud; (b) failed disclose material information; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Sonus' common stock during the Class Period.

## COUNT II

### VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT

72. Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

73. The Individual Defendants, by virtue of their positions, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the 1934 Act.

74. The Individual Defendants had the power and influence and exercised the same to cause Sonus to engage in the illegal conduct and practices complained of herein.

75. By reason of the conduct alleged in Count I of the Complaint, the Individual Defendants are liable jointly and severally and to the same extent as the Company for the aforesaid wrongful conduct, and are liable to Plaintiff and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Sonus' common stock during the Class Period.

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for judgment as follows:

A. Declaring this action to be a proper class action and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of defendants, together with interest thereon;

C. Awarding Plaintiff the fees and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys; and experts;

D.   Granting extraordinary equitable and/or injunctive relief as permitted by law, equity and federal and state statutory provisions sued on hereunder, and

E.   Granting such other and further relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff demands a jury trial of all issues so triable.

Date:   February 13, 2004

                                        Respectfully submitted,

                                        **BERMAN DEVALERIO PEASE TABACCO**
                                        **BURT & PUCILLO**

                                        */s/ Shannon L. Hopkins*
                                        Jeffrey C. Block (BBO # 600747)
                                        Michael T. Matraia (BBO # 633049)
                                        Shannon L. Hopkins (BBO # 657485)
                                        One Liberty Square
                                        Boston, MA 02109
                                        (617) 542-8300

                                        **ZIMMERMAN, LEVI & KORSINSKY LLP**
                                        Eduard Korsinsky
                                        39 Broadway, Suite 1440
                                        New York, New York 10006
                                        (212) 363-7500

                                        Counsel for Plaintiff

Sonus Networks/draft pleadings/complaint

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Michelle Trebitsch duly certifies and says, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. I engaged in the following transactions in Sonus Networks, Inc. Common Stock during the class period:

| Date     | Transaction | No. Shares | Price |
|----------|-------------|------------|-------|
| 12/01/03 | Buy         | 200        | 9.15  |
| 12/10/03 | Buy         | 300        | 7.27  |
| 12/15/03 | Buy         | 150        | 7.69  |
| 12/17/03 | Buy         | 55         | 7.65  |
| 1/7/04   | Buy         | 250        | 7.56  |
| 1/20/4   | Buy         | 500        | 8.39  |
| 1/20/04  | Buy         | 400        | 8.45  |
| 1/21/04  | Buy         | 200        | 8.87  |
| 1/21/04  | Buy         | 125        | 8.68  |
| 1/22/04  | Buy         | 200        | 8.61  |
| 1/29/04  | Buy         | 200        | 8.17  |
| 2/4/04   | Buy         | 100        | 7.68  |
| 2/11/04  | Buy         | 100        | 7.25  |
| 2/11/04  | Buy         | 100        | 6.73  |

5. Within the last 3 years, I have not served as a class representative in any federal securities fraud case.

6.  I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this 11th day of February 2004.

_____
MICHELLE TREBITSCH